NOT DESIGNATED FOR PUBLICATION

No. 115,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MILTON SNODDY,
*Appellant*,

v.

REX PRYOR,
Warden,
Lansing Correctional Facility,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed October 7, 2016. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellee.


Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.


*Per Curiam*:  Milton Snoddy, an inmate at the Lansing Correctional Facility (Lansing), appeals the district court's decision denying his K.S.A. 60-1501 petition following an evidentiary hearing. After the hearing, the district court issued a memorandum decision explaining its ruling. Ultimately, it found that Snoddy had failed to sustain his burden of proof. We agree. Specifically, we find that Snoddy has failed to establish that Lansing officials acted with a deliberate indifference to his medical needs. Thus, we affirm.

1

On March 4, 2013, Snoddy filed an inmate grievance form alleging that he received inadequate care at the Lansing medical clinic when he was sick with the flu and/or bronchitis. Snoddy alleged that he had been examined by an Advance Practice Registered Nurse (APRN) on February 28, 2013, who determined that he had "a bad case of the Flu." Evidently, the APRN ordered that he receive antibiotics for 5 days. Although he received his first two doses of antibiotics, Snoddy alleges that he was told there were no more antibiotics available when he returned for his third dose and that he should come back the next day. Further, Snoddy alleges that he was told that there was no order for him to receive additional antibiotics when he returned the next day.

Apparently Snoddy's grievance was sent to the Secretary of the Department of Corrections (Secretary) for a response. On March 19, 2013, the designee of the Secretary issued a "Grievance-Response on Appeal," which stated:

> "In February 2013 the inmate was seen and diagnosed with acute bronchitis and medication was ordered. Saline nasal spray was renewed. A double dose of antibiotics were ordered for 5 days. The inmate was given his second dose when he was told that there were no orders for more medication. The inmate refused to start on statin for his cholesterol, no show for blood pressure check. No show for his follow up visit for bronchitis."

The Secretary's designee also noted that the "Department's Physician Contract Monitor Consultant" who reviewed the matter had concerns regarding lack of documentation and medication orders but found that Snoddy appeared stable and had no long term side effects from not receiving all of the antibiotics ordered. As for action taken, the designee noted: "I have been advised that a recommendation for corrective action will be forwarded to CCS Regional Medical Director."

On May 6, 2013, Snoddy filed a K.S.A. 60-1501 petition. Snoddy did not make any factual allegations on the face of the petition. He did, however, attach a copy of the grievance form, the Secretary's response, and a letter dated April 19, 2013. In the letter, Snoddy had expressed his concerns about how his grievance had been handled and his disagreement with the findings.

Subsequently, the district court issued a writ of habeas corpus and ordered Lansing to respond to the petition. On August 22, 2013, Lansing filed a motion to dismiss Snoddy's petition. A few weeks later, the district court appointed an attorney to represent Snoddy. The attorney filed a response to the motion to dismiss on October 17, 2013.

On December 31, 2013, Snoddy asked the district court for a new attorney. In support of his request, he provided the district court with several letters between him and his attorney discussing strategy on handling the case. On January 14, 2014, the district court granted Snoddy's request to dismiss his attorney and subsequently appointed another attorney to represent Snoddy.

On April 7, 2014, Snoddy's new attorney filed another response to Lansing's motion to dismiss. A few weeks later, a status hearing was held. In a journal entry entered following the hearing, the district court ordered—based on agreement of the parties—that Snoddy should undergo an independent medical examination by a physician at the University of Kansas Medical Center to determine if he suffered any long term effects from not receiving all of the antibiotics that had been ordered.

At an evidentiary hearing held on October 22, 2015, Snoddy indicated that he had received a report from the independent medical exam. However, the report is not in the record. Lansing admitted into evidence a letter from Dr. Paul Corbier, dated October 20, 2015, regarding his review of Snoddy's medical records. The letter stated that Snoddy had a physical exam performed by a "Dr. Louis" from the University of Kansas in November

2014, but no results of the examination were discussed. Dr. Corbier did opine that Snoddy's lab and EKG results from August 2014 were essentially normal.

Although Snoddy testified that the district court had also ordered that an MRI be performed, there is nothing in the record to support his allegation that the district court entered such an order. Snoddy further testified that he needed to have the independent medical examination repeated because he did not get the results in a timely manner. In response, Lansing's attorney argued that the independent medical examination ordered by the district court did not indicate that Snoddy had any medical condition as a result of not receiving all the antibiotics he was supposed to have been given in February 2013. The district judge then took the matter under advisement and stated that he would listen to the recordings from his past hearings in this case before rendering his decision.

On November 17, 2015, the district court entered a memorandum decision granting Lansing's motion to dismiss and denying Snoddy's request for writ of habeas corpus. The district court found that the evidence submitted by Lansing "directly contradicts the assertion that the Secretary has ignored his complaint." In addition, the district court determined that Snoddy had failed to sustain his burden of proof in this case. On December 16, 2015, the district court denied a pro se motion for reconsideration.

ANALYSIS

On appeal, Snoddy contends that the district court erred in failing to find that Lansing was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. The standard of review for an appeal of a decision on a K.S.A. 60-1501 petition is whether the factual findings of the district court are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law. *Darnell v. Simmons*, 30 Kan. App. 2d

778, 780, 48 P.3d 1278 (2002). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). Our review of conclusions of law is unlimited. *Rice v. State*, 20 Kan. App. 2d 710, 711, 893 P.2d 252, *rev. denied* 257 Kan. 1093 (1995). In a K.S.A. 60-1501 action, the petitioner bears the burden to prove that a constitutional right was violated. *Sammons v. Simmons*, 267 Kan. 155, 158, 976 P.2d 505 (1999).

In Kansas, an incarcerated person retains the right to adequate medical care and treatment, which is a right derived from the prohibition against the infliction of cruel and unusual punishments in both the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. Habeas corpus is the appropriate remedy for a prisoner to use to allege being deprived of adequate medical care and treatment. *Darnell*, 30 Kan. App. 2d at 780 (citing *Levier v. State*, 209 Kan. 442, 497 P.2d 265 [1972]).

We examine violations of the Eighth Amendment by measuring whether there has been deliberate indifference to the serious medical needs of a prisoner. Deliberate indifference to the serious medical needs of prisoners occurs if there is unnecessary and wanton infliction of pain. Moreover, when prison officials prevent an inmate from receiving recommended treatment or deny an inmate access to medical personnel capable of evaluating the need for treatment, deliberate indifference to serious medical needs is shown. *Darnell*, 30 Kan. App. 2d at 780-81.

Deliberate indifference has both objective and subjective components. The objective component is met if the deprived medical need is sufficiently serious, which means it "'"has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." [Citations omitted.]'" 30 Kan. App. 2d at 781. The subjective component is

5

met if a prison official knows of an excessive risk to the inmate's health or safety and disregards that risk. 30 Kan. App. 2d at 781. Deliberate indifference has also been described as callous inattention, reckless disregard, gross negligence, and more than ordinary negligence but less than express intent to harm or maliciousness. See 30 Kan. App. 2d at 781 (citing *Medcalf v. State of Kan.*, 626 F. Supp. 1179, 1190 [D. Kan. 1986], and *Cupples v. State*, 18 Kan. App. 2d 864, 861 P.2d 1360 [1993]).

Although it is undisputed that Snoddy did not receive some of the antibiotics that were ordered in February 2013, Snoddy made no showing at the evidentiary hearing that there was an excessive risk to his health or safety. Moreover, he made no showing that Lansing knowingly acted in disregard of an excessive risk if, in fact, one existed. At most, Snoddy has alleged that he may have regressed for a short period of time as a result of not receiving a full dose of antibiotics. Not only did the district court hold a hearing in this case to allow Snoddy to present whatever evidence he had to support his claim of deliberate indifference to serious medical needs, it also ordered an independent medical examination. For whatever reason, Snoddy did not introduce the results of the independent medical examination at the hearing. Lansing, however, did present the opinion of a physician who stated Snoddy's lab and EKG results were essentially normal.

In summary, we find that the district court's decision is supported by substantial competent evidence. Further, we agree with the district court that Snoddy has failed to sustain his burden to prove that Lansing showed a deliberate indifference to a serious medical need. In fact, Snoddy has not proven an excessive risk to his health, much less that Lansing knew of such a risk and ignored it. Certainly, there has been no showing of callous inattention, reckless disregard, or gross negligence in this case. We, therefore, affirm the district court's decision denying Snoddy's K.S.A. 60-1501 petition.

Affirmed.